UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER B. HOWARD,

                Plaintiff,

-vs-                                                Case No.  6:07-cv-35-Orl-19DAB

OREGON TELEVISION, INC.,

                Defendant.
_____

# ORDER

This case comes before the Court on the following:

1.      Defendant's Motion for Case-Dispositive Summary Judgment, Statement of Undisputed Material Facts, and Supporting Memorandum of Law (Doc. No. 38, filed Aug. 21, 2007);

2.      Defendant's Appendix in Support of its Motion for Case-Dispositive Summary Judgment, Statement of Undisputed Material Facts, and Supporting Memorandum of Law (Doc. No. 39, filed Aug. 21, 2007);

3.      Plaintiff's Response to Defendant's Motion for Case-Dispositive Summary Judgment, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Plaintiff's Statement of Undisputed Material Fact, and Supporting Memorandum of Law (Doc. No. 41, filed Sept. 21, 2007);

4.      Plaintiff's Appendix in Support of his Response to Defendant's Motion for Case-Dispositive Summary Judgment, Plaintiff's Response to Defendant's Statement of

Undisputed Material Facts, Plaintiff's Statement of Undisputed Material Fact, and Supporting Memorandum of Law (Doc. No. 42, filed Sept. 21, 2007); and

5.   Plaintiff's Supplement to Response to Defendant's Motion for Case-Dispositive Summary Judgment and Supplement to Plaintiff's Statement of Undisputed Material Fact (Doc. No. 43, filed Sept. 24, 2007).

## Background

Plaintiff Christopher Howard worked as an accountant for Defendant Oregon Television, Inc. from 1995 until his termination in October of 2005.   (Doc. No. 39-2, pp. 10, 12, 17).   During his tenure Plaintiff worked at several different stations in the Orlando area.   (*E.g., id.* at p. 15).   Plaintiff repeatedly complained that he was underpaid and being discriminated against because of his race. (*E.g.,* Doc. No. 42-2, pp. 34, 35, 40, 41-42).   However, Plaintiff had a documented history of poor performance and repeated mistakes, specifically from 2003 until 2005.   (Doc. No. 39-3, ¶¶ 6-13; Doc. No. 39-4, pp. 1-41).   Plaintiff was ultimately fired because his performance failed to improve. (Doc. No. 39-3, ¶ 13).

After he was fired, Plaintiff filed the underlying claim against Defendant in Florida state court alleging race discrimination in violation of the Florida Civil Rights Act ("FRCA"), Fla. Stat. § 760.01 *et seq.*, and Title VII of Civil Rights Act of 1964 ("Title VII") , 42 U.S.C. § 2000e *et seq.*. (Doc. No. 2).   Defendant removed the action to this Court.   (Doc. No. 1).   Defendant now moves for Summary Judgment.   (Doc. No. 38).   Plaintiff opposes Defendant's Motion.   (Doc. No. 41).

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is only appropriate when the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The moving party has the burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.*

**Analysis**

Discrimination claims under the FRCA are analyzed in the same manner as Title VII claims, and the precedent from Title VII claims is applicable to FRCA claims. *E.g., Gamboa v. Am. Airlines*, 170 Fed. Appx. 610, 612 (11th Cir. 2006); *Maniccia v. Brown*, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999). Therefore, the Court will analyze both of Plaintiff's claims together.

In order to prevail on a Title VII claim for disparate treatment employment discrimination, an employee must prove that his employer intentionally discriminated against him by a preponderance of the evidence. *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2006). An employee can prove discriminatory intent by either direct or circumstantial evidence. *Id.* Direct evidence establishes discriminatory intent without resort to inference or presumption. *Id.* In the absence of direct evidence, an employee must follow the *McDonnell-Douglas* burden shifting framework for proving discrimination by circumstantial evidence. *Id.*

Under the *McDonnell-Douglas* framework, the employee must first prove a *prima facie* case of discrimination. *Id.* In order to establish a *prima facie* case of discrimination, an employee must show: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) his employer treated similarly situated individuals more favorably; and (4) he was qualified to perform the job in question. *Id.* Once an employee establishes a prima facie case, there is a presumption of discrimination, and the burden of production shifts to his employer to produce a "legitimate non-discriminatory reason" for the adverse employment action. *Id.*; *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1082-83 (11th Cir. 1996). If the employer set forth a legitimate non-discriminatory reason, the employee can prevail by producing evidence that the employer's reason is really a pretext for discrimination. *Joe's Stone Crab, Inc.*, 220 F.3d at 1286. The employee may establish pretext by proving his *prima facie* case and that his employer's proffered reason is false. *Id.* at 1286 n. 21. Under this framework, the employer's burden is merely one of production. *Harris,* 99 F.3d at 1083. The employee always bears the burden of proving intentional discrimination by a preponderance of the evidence. *Id.*

## I.      Direct Evidence

Plaintiff alleges that there is direct evidence of discrimination, but he offers no such evidence of discrimination.  (Doc. No. 41, p. 6).  The only evidence in the record is Plaintiff's own general belief that he was discriminated against.  (*E.g.,* Doc. No. 39-2, pp. 8-9; Doc. No. 42-2, p. 35).  However, Plaintiff's statements are devoid of specific facts to indicate a rational basis for his beliefs.  (*E.g., id.*); *cf.* (Doc. No. 42-2, pp. 27-28 (Defendant's response to one of Plaintiff's charges of discrimination, requesting that Plaintiff provide specifics so that it could be investigated)).  Additionally, Plaintiff's belief is contradicted by his own testimony that no one affiliated with his employer ever made any racist comment toward him.  (Doc. No. 39-2, pp. 45-46[1]; Doc. No. 39-4, p. 47-48[2]).

---

[1]      The following is an excerpt from Plaintiff's deposition:

Q      Okay.  Number 7 asks to identify statements by management.  And you said there are no spoken discriminatory statements, is that right?
A      Not that I recall.
Q      That would be something you would remember, if someone made a racist joke?
A      Yes.
Q      As far as you're aware, no one made a racist joke?
A      Not that I recall.
Q      Derogatory comment?
A      No.
Q      No manager you worked with, like Mr. Castro, Mr. Schultz, Ms. Dugan, Ms. Fromm, no one made any sort of derogatory jokes or comments?
A      No.
Q      And as far as you're aware, you haven't heard any coworkers make any such statements to you – derogatory jokes or racist comments?
A      No.

(Doc. No. 39-2, p. 45-46).

[2]      Interrogatory Number 7 in Defendant's first set of interrogatories states:

(continued...)

Plaintiff's Response to Defendant's Motion references other unrelated cases of racial employment discrimination that were previously filed against Defendant. (Doc. No. 41, p. 7). However, Plaintiff's allegations are insufficient to show direct evidence of discrimination because an employee must show evidence that indicates his employer discriminated against him, not other employees. *See Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). Therefore, the Court will analyze Plaintiff's claim under the *McDonnell-Douglas* burden shifting framework for circumstantial evidence of discrimination.

## II.      Circumstantial Evidence

Defendant does not dispute the first or second elements of Plaintiff's *prima facie* case, that Plaintiff was a member of a protected class and that his termination constitutes an adverse employment action. (Doc. No. 38, p. 19, n. 3). Defendant also concedes the final element of Plaintiff's *prima facie* case, that Plaintiff was qualified to perform the position in question, for the

---

[2](...continued)
7.       Please identify all statements (whether spoken or in writing) made by any person in Defendant's management that you believe indicates or shows bias or discrimination against you because of your race. Using the format below, include in your answer the following: (1) the person who made the statement; (2) the person's job title; (3) the date the statement was made; (4) whether the statement was spoken or written; (5) if made in writing, identify the document containing the statement; and (6) the exact statement made.

**ANSWER:**     The basis for the charge of discrimination is the disparity of treatment between Mr. Howard and his peers, who are not the same race. There were no spoken discriminatory statements and Mr. Howard does not currently have a copy of written documentation of his peers to substantiate the claim of bias.

(Doc. No. 39-4, pp. 47-48).

purposes of the instant motion.  (*Id.*)  Consequently, analysis of the instant motion turns on whether Plaintiff has established the third element of his *prima facie* case.

The third element of an employee's prima facie case requires him to show that his employer treated similarly situated individuals more favorably.  *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2006).   A plaintiff must to prove that he and the employees are similarly situated in all relevant respects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  The court must consider whether the employee and the other individuals were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Id.*  Both "the quantity and quality of the comparator's misconduct [must] be nearly identical."  *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (female employee who committed four policy violations was not similarly situated to male employees who each committed violations once); *see also Knight v. Baptist Hosp. of Miami, Inc.,*  330 F.3d 1313, 1316-17 (11th Cir. 2003) (although the employee and comparator had committed the same act, they were not similarly situated because comparator's overall record was better); *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1260 (11th Cir. 2001) (plaintiff and comparator who both committed assault were not similarly situated because plaintiff had three prior arrests, with the most recent occurring a few months before his termination, and comparator had one prior arrest that occurred two years earlier).   Summary judgment is appropriate if the employee fails to show the existence of a similarly situated individual and no other evidence of discrimination is present.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff asserts that he was subject to discrimination because he was allegedly disciplined for mistakes for which other employees were not disciplined.  (*E.g.,* Doc. No. 39-2, pp. 5, 24). However, Plaintiff was unable to identify specific employees who were treated more favorably after

making a mistake. (*E.g., id.* at pp. 8-9).[3] Moreover, Plaintiff admitted that he had no evidence that

other employees were not disciplined in the same manner.  (*Id.* at p. 7).[4]

    Plaintiff attempts to support his *prima facie* case by alleging that Marisol Colon and Cathy

McCurdy were similarly situated individuals who made similar mistakes but were not disciplined.

(*E.g.,* Doc. No. 42-3, pp. 29-30 (Plaintiff's April 14, 2006 letter to the EEOC alleging that he was

---

[3]    The following is an excerpt from Plaintiff's deposition:

Q    Okay.  Now, in terms of employees that you believe made mistakes, who are these other employees that you claim were getting, I guess, better treatment than you?

A    As I said, my feeling is that any employee who is human will make mistakes. So my list of any employees would be all-inclusive of any employees.

Q    Who specifically do you know made a mistake and you think is getting better treatment?

A    As I said, I feel that all the employees have made mistakes.

Q    All the employees in what?

A    All the employees in the accounting department have made mistakes.  Now, I am not the one who would have those – have the documentation on that.

. . .

Q    The answer is, You don't know the end result of employees who made mistakes and that management was aware of and whether management took action?

A    Right. I don't know what management did in response to those mistakes they notice.

(Doc. No. 39-2, pp. 8-9).

[4]    The following is an excerpt from Plaintiff's deposition:

Q    Okay.  In terms of going – back to the other people – do you have any evidence that there were other people who committed mistakes different than what you talked about before with the format of a document, but mistakes – do you have any evidence that these people were not written up for mistakes?

A    I don't have evidence there were not written up.  I don't have evidence that they were either.

(Doc. No. 39-3, p. 7).

discriminated against identified Colon and McCurdy as similarly situated)).  According to Plaintiff, Marisol Colon was a similarly situated individual because she filed her "No-Charge Reports" in an untimely manner.  (*Id.*)  Plaintiff also contends that Cathy McCurdy was similarly situated to him because she failed to perform her job duty of assisting the "Log Coordinator."  (*Id.*)   However, Plaintiff's arguments are not well taken because the record indicates that neither Marisol Colon nor Cathy McCurdy are similarly situated to Plaintiff.

First Marisol Colon and Plaintiff had different supervisors.  (Doc. No. 39-2, p. 33; Doc. No. 39-3, ¶¶ 5, 15).  Second, although both were accountants, Colon and Plaintiff did not perform the same duties.  (*See* Doc. No. 39-2, pp. 42-43).  Third, Colon's mistake on the charge reports was her first infraction in an otherwise stellar performance record.  (Doc. No. 39-3, ¶ 15; Doc. No. 42-3, p. 38; Doc. No. 42-3, pp. 44-49).   Third, Colon was also warned about her mistake, but her performance improved afterwards.  (*E.g.,* Doc. No. 39-3, ¶ 15, Doc. No. 42-3, p. 38).  Unlike Colon, Plaintiff had a long record of poor performance and failure to rectify his mistakes.  (*See* Doc. No. 39-4, pp. 1-41 (Plaintiff's performance reviews between November 2003 and October 2005 showing poor performance and failure to improve)).  Therefore, there is no basis to conclude that Marisol Colon and Plaintiff were similarly situated individuals.

Next, Plaintiff alleges that Cathy McCurdy was a similarly situated individual because McCurdy failed to perform her job duty of backing up the Log Coordinator.  (Doc. No. 41, p. 7). There is no evidence from which to conclude that McCurdy and Plaintiff were similarly situated. First, McCurdy and Plaintiff did not hold the same position.  *Compare* (Doc. No. 42-3, p. 52 (October 2005 performance review listing McCurdy's job as Payroll Manager) *with* (Doc. No. 39-4, p. 39 (October 2005 performance review listing Plaintiff's job as Accountant).  Moreover, Plaintiff

and McCurdy did not perform the same duties.  (Doc. No. 39-2, pp. 41-43 (Plaintiff testified that he

and McCurdy performed different duties)).  Although both had some responsibility for backing up

the Log Coordinator, it was one of Plaintiff's primary duties but not a primary duty of McCurdy.

(Doc. No. 39-3, ¶ 18; Doc. No. 42-3, p. 38).  Additionally, even if Plaintiff and McCurdy could be

considered similarly situated with respect to their duties performed, their misconduct was not similar

because backing up the Log Coordinator was a task Plaintiff performed well.  (*See, e.g.,* Doc. No.

39-4, p. 8).  Even so, McCurdy was repeatedly warned about her failure to back up the Log

Coordinator.  (Doc. No. 39-3, ¶ 19; Doc. No. 39-3, pp. 10, 12).  Like Plaintiff, McCurdy was given

a final warning about her performance, but unlike Plaintiff, her performance improved after such

warning was issued.  *Compare* (Doc. No. 42-3, pp. 54-55 (McCurdy's February 2004 performance

review giving her a final warning); Doc. No. 42-3, pp. 52 (McCurdy's October 2005 performance

review indicating improvement); Doc. No. 39-3, pp. 12-13 (McCurdy's July 2006 performance

review showing further improvement and rating her as meeting job requirements)) *with* ( Doc. No.

39-4, pp. 1-41 (Plaintiff's performance reviews between November 2003 and October 2005 showing

poor performance and failure to improve)).  Thus, there is no basis to conclude the Plaintiff and

Cathy McCurdy were similarly situated.

Plaintiff has failed to produce evidence that a similarly situated individual outside of his race

was treated more favorably than he.  Other than Plaintiff's unsupported, general claims that he

believed he was discriminated against, there is no other evidence of discrimination present in the

record.  Consequently, Plaintiff has failed to establish his *prima facie* case, and the Court must grant

summary judgment for Defendant.

**Conclusion**

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 38).  The Clerk shall enter **JUDGMENT FOR DEFENDANT,** and this file shall be closed**.**

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November 13, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party